# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KIA LIVINGSTON** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 22-2257** |
| **v.** | : | |
| | : | |
| **ALWAYS BEST CARE** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                          MARCH 22, 2024

## MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff Kia Livingston ("Plaintiff") filed this employment discrimination action against her former employer, Defendant Always Best Care ("Defendant"), asserting claims of unlawful discrimination in violation of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.*, and the Age Discrimination in Employment Act of 1976 (the "ADEA"), 29 U.S.C. § 621 *et seq*. Plaintiff alleges that Defendant unlawfully terminated her employment as a caregiver because of her disability and age and in retaliation for her request for a reasonable accommodation and that Defendant failed to provide her a reasonable accommodation for her disability.

Presently, before this Court is Defendant's motion for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, (ECF 24), which Plaintiff has opposed, (ECF 30).[1] The issues presented in the motion are fully briefed and, therefore, are ripe for disposition. For the reasons set forth herein, Defendant's motion for summary judgment is granted. Accordingly, judgment is entered in favor of Defendant on all of Plaintiff's claims.

---

[1]     This Court has also considered Defendant's reply. (ECF 33).

1

**BACKGROUND**

When ruling on a motion for summary judgment, a court must consider all record evidence and the supported relevant facts in the light most favorable to the non-movant — here, Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The facts relevant to the underlying motion are summarized as follows:[2]

Defendant provides non-medical senior care services at clients' homes in Philadelphia, Bucks, and Delaware counties. Defendant hired Plaintiff in June 2015 as a Home Health Aide, also referred to as a "Caregiver." Caregivers are required to participate in yearly competency reviews. A Caregiver's specific job duties depend on the care plan for his or her assigned client but typically include things like cooking, light housekeeping, bathing, and running errands. When Plaintiff was hired, she signed a Code of Conduct Policy and Acknowledgement that provided, *inter alia*, that the following infractions typically result in immediate termination without prior notice: abandonment, insubordination, inappropriate or unprofessional conduct such as fighting or causing a disturbance on agency premises, and use of obscene language.

On October 11, 2019, Plaintiff began experiencing pain in her side after she arrived at her client's house for work. Plaintiff attributed her pain to the fact that she had carried a lot of laundry for her client that day. After leaving her client's home that day, Plaintiff walked to a hospital emergency room. The emergency room medical providers took x-rays but did not find anything. The emergency room providers gave Plaintiff Tylenol and suggested that she follow up with her primary care doctor. Plaintiff called out of work each day the following week.

Plaintiff testified that the pain prevented her from putting pressure on her hip while walking and sometimes caused her to be a "little upset" because she was not able to do some of the "things" that she was normally able to do. The pain interfered with her walking because walking was difficult to do on crutches.

On October 17, 2019, Plaintiff visited her primary care doctor, Dr. Matthew Delmonico, regarding her pain. Dr. Delmonico's notes indicate "acute right-sided low back pain with right-sided sciatica . . . consistent with diffuse lower back and piriformis spasm." Dr. Delmonico agreed with "plan for Medrol dose pack, NSAIDS, and HS muscle relaxant and lidocaine patch." He also provided Plaintiff a note excusing her from work for two weeks and prohibiting her from lifting or bending for two weeks after her return.

---

[2]     These facts are taken from the parties' briefs, exhibits, and statements of facts. To the extent that any fact is disputed, such dispute will be noted and, if material, will be construed in Plaintiff's favor.

On October 21, 2018, without speaking with anyone from Defendant's office, Plaintiff returned to her previously assigned client's home. When she arrived, Plaintiff observed another Caregiver at the home who had been assigned to care for the client in Plaintiff's absence. Plaintiff did not know who the new Caregiver was, and she did not speak with the new Caregiver. Plaintiff only observed the new Caregiver from across the street, approximately 50 feet away. Notwithstanding, Plaintiff thought the new Caregiver was "young." During her deposition, Plaintiff testified that the client told her that the new Caregiver was on "light duty" and that she did not perform such tasks as laundry.

During her deposition, Plaintiff testified that she did not need any sort of accommodation when she returned to work. Specifically, she testified:

> Q. [W]ould you have needed some sort of accommodation to avoid lifting and bending or did your job not involve lifting and bending?
>
> A. What I did for [the client] did not involve me lifting or bending for her . . . I didn't have to bend and—you know. I didn't have to do that.

(Pl. Dep. Tr., ECF 24-3, Ex. A., at 118:24-119:11). Plaintiff also conceded that she did not require light duty when she returned to work after her two-week absence.

> Q. So you essentially didn't need light duty once you were able to return, right?
>
> A. Right. It really didn't call for me to do it because it was already light. You know what I'm saying? I didn't have to do strenuous things for her.

(*Id.* at 119:12-19).

By letter dated November 15, 2019, Defendant's Senior Human Resources Manager, Gerald Mack, informed Plaintiff, *inter alia*, that she was overdue for her state-mandated in-service. During a meeting on November 26, 2019, Mr. Mack informed Plaintiff that the company was providing an in-service for Caregivers the following day, and Plaintiff agreed to attend. Plaintiff showed up for the in-service on November 27, but left before it started because she had a medical appointment. Before leaving, Plaintiff advised the receptionist that she needed to leave before the in-service began.

By letter dated December 2, 2019, Defendant advised Plaintiff that her employment was terminated due to "HR Non-Compliance."

3

Sometime after her termination, Plaintiff's former client called Plaintiff and asked her to come assist because the client had not been provided an aide in a couple of days. Plaintiff went to the former client's home and was then connected by phone to Ted, an employee of Defendant. Ted told Plaintiff that the client really liked her and wanted her to come back. Plaintiff responded that she was willing to return but advised that she had filed paperwork with the EEOC. Ted then rescinded the offer.

**LEGAL STANDARD**

Rule 56 governs summary judgment motion practice. Fed. R. Civ. P. 56. Specifically, this Rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When evaluating a motion under Rule 56, the court must view the evidence in the light most favorable to the nonmoving party. *Galena*, 638 F.3d at 196.

Pursuant to Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. After the movant has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence

or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B).  The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), or rest on the allegations in the pleadings, *Celotex*, 477 U.S. at 324.  Rather, the nonmoving party must "go beyond the pleadings" and, either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.*  Additionally, "courts must accord special care to pro se claimants, liberally construing their filings and holding them to less stringent standards than formal pleadings drafted by lawyers."  *In re Energy Future Holdings Corp.*, 949 F.3d 806, 824 (3d Cir. 2020).

**DISCUSSION**

As noted, Plaintiff asserts that Defendant violated the ADA and the ADEA when unlawfully terminating her employment as a Caregiver because of her age and disability and in retaliation for her request for a reasonable accommodation and by failing to provide her a reasonable accommodation for her disability.  Defendant moves for summary judgment on Plaintiff's claims, arguing, *inter alia*, that Plaintiff:  (1) failed to present evidence sufficient to meet her *prima facie* burden on her ADEA claim; (2) failed to present evidence of either a request or need for accommodation; and (3) failed to present evidence sufficient to rebut Defendant's legitimate, non-discriminatory reason for terminating Plaintiff's employment.  These arguments are addressed in turn.

### *Plaintiff's ADEA (Age Discrimination) Claims*

At Count II of the complaint, Plaintiff asserts a claim for age discrimination under the ADEA. To establish a *prima facie* case of age discrimination under the ADEA, Plaintiff must present evidence sufficient to demonstrate that (1) she is forty years of age or older; (2) Defendant took an adverse employment action against her; (3) she was qualified for the position in question; and (4) she was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus or under circumstances giving rise to an inference of discrimination. *Vasbinder v. Sec'y Dep't of Veterans Affs.*, 487 F. App'x 746, 749-50 (3d Cir. 2012) (citing *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009)).

Defendant argues that Plaintiff failed to present any admissible evidence that she was replaced by someone sufficiently younger than her or any other evidence from which one could reasonably infer that she was terminated because of her age. Plaintiff provides no response to this argument. Indeed, she does not address her ADEA claim at all in her response to Defendant's motion. In failing to respond and/or present any evidence to support this claim, Defendant's motion for summary judgment is granted with respect to Plaintiff's ADEA claim.

### *Plaintiff's ADA (Disability Discrimination) Claims*

At Count I of the complaint, Plaintiff asserts claims for violation of the ADA premised on allegations that Defendant failed to provide her a reasonable accommodation for her disability and terminated her employment because of her disability and/or in retaliation for her requesting a reasonable accommodation. Defendant moves for summary judgment on each of these claims on the basis that Plaintiff never requested an accommodation and failed to present evidence sufficient to show that Defendant's legitimate, non-discriminatory and non-retaliatory reasons for terminating her employment was pretext.

"Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). "In other words, an employer can unlawfully 'discriminate' within the meaning of the ADA in two different ways . . . (1) if the employer takes adverse action against a qualified individual with a disability and that decision was motivated by the individual's actual disability or the employer's belief that the individual had a disability (*i.e.*, disparate treatment); or (2) if the employer fails to make reasonable accommodations for that individual." *Fuoco v. Lehigh Univ.*, 981 F. Supp. 2d 352, 361 (E.D. Pa. 2013). In her complaint, Plaintiff asserts both "disparate treatment" and "failure to accommodate" claims.

To maintain a failure to accommodate claim under the ADA, Plaintiff must present evidence sufficient to show that (1) she was disabled and her employer knew it; (2) she requested an accommodation; (3) Defendant did not make a good faith effort to accommodate; and (4) she could have been reasonably accommodated. *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017). Plaintiff's response to Defendant's motion contains no argument or evidence in support of her failure to accommodate claim. Moreover, as argued by Defendant, Plaintiff conceded during her deposition testimony that she did not need an accommodation to return to work. (*See* Pl. Dep. Tr., ECF 24-3, Ex. A., at 118:24-119:19). In light of this unrebutted concession and Plaintiff's failure to present any evidence in support of her failure to accommodate claim, Defendant's motion is granted with respect to Plaintiff's failure to accommodate claim. Plaintiff's retaliation claim — also premised on her allegation that she made a request for an accommodation — fails for these same reasons. Because Plaintiff has not presented any evidence

7

of a request or need for an accommodation, Plaintiff has failed to meet her burden with respect to her retaliation claim.

Plaintiff also asserts an ADA claim premised on her contention that Defendant wrongfully terminated her employment because of her disability. Defendant argues that it is entitled to summary judgment on this claim because Plaintiff has failed to present evidence sufficient to rebut Defendant's legitimate, non-discriminatory reasons for her termination.

Discrimination claims arising under the ADA are subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Tierney v. Geisinger Sys. Serv.*, 2021 WL 3137950, at *1 (3d Cir. July 26, 2021) (holding that *McDonnell Douglas* burden-shifting framework applied to ADA disparate treatment claim). Under this framework, Plaintiff must first establish a *prima facie* case by presenting evidence sufficient to show that she was disabled, was qualified for the position in question, and suffered an adverse employment action due to being disabled or perceived as disabled. *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006). The burden then shifts to Defendant to provide a legitimate, nondiscriminatory business reason for its decision to terminate Plaintiff. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Once Defendant establishes a legitimate, nondiscriminatory business reason, the burden shifts back to Plaintiff to show that the reason proffered by Defendant was pretextual. *Id.* To demonstrate pretext, Plaintiff must present evidence sufficient to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence[.]" *Id.* at 765 (internal citations omitted).

Assuming that Plaintiff can meet her *prima facie* burden, Defendant argues that she has failed to present evidence sufficient to rebut Defendant's legitimate, non-discriminatory reason for

her termination, *i.e.*, that Plaintiff was terminated because she left and failed to complete a mandatory in-service training. In response, Plaintiff argues that Defendant's proffered reason should be deemed mere pretext because: (1) she previously missed an in-service training but was not terminated; (2) the in-service training was not state mandated and consisted of a video presentation and test that could easily have been rescheduled; and (3) Plaintiff asked that the in-service be rescheduled for her.

As Defendant argues, none of Plaintiff's proffered attacks on Defendant's reason for her termination can be reasonably construed to call into question Defendant's legitimate, non-discriminatory reason for Plaintiff's termination. The fact that Plaintiff previously missed an in-service training but was not terminated does not contradict Defendant's termination of Plaintiff after a *second* such missed in-service training. Moreover, after Plaintiff missed the previous in-service training, Defendant provided her a written notice that advised: "Please be sure to attend this Annual in-Service training to avoid any consequences, up to and including removal from your client, and suspension of your direct deposits." (Pl. Opp., Ex. D, ECF 30-1). That Defendant terminated Plaintiff after a second infraction that followed a warning of such possible termination after her first infraction cannot reasonably be deemed implausible.

Plaintiff's suggestions that the in-service training could easily be rescheduled and that she requested that it be rescheduled also do not contradict or make implausible Defendant's reason for her termination. It is undisputed that Plaintiff missed or failed to complete *two* scheduled in-service trainings after agreeing to attend those trainings. Further, the second infraction occurred after Plaintiff was warned of the possible termination of her employment for a second infraction. Neither the purported ease of rescheduling nor Plaintiff's offer to reschedule constitute evidence

from which a reasonable factfinder could doubt Defendant's proffered reasons for her termination. Accordingly, Defendant's motion for summary judgment with respect to Plaintiff's ADA discrimination claim is granted.[3]

**CONCLUSION**

For the foregoing reasons, this Court finds that Plaintiff has failed to meet her summary judgment burden with respect to any of her claims. Accordingly, Defendant's motion for summary judgment is granted. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.

---

[3] Plaintiff's "mixed motive" argument is also without merit. The mixed motive theory is only applicable where a plaintiff presents direct evidence of the employer's discriminatory animus. *Buchsbaum v. Univ. Physicians Plan*, 55 F. App'x 40, 44-45 (3d Cir. 2002). Here, Plaintiff proffers no direct evidence of discrimination. As such, the mixed motive theory is not applicable.